EEOC v. CVS Pharmacy How would you define what constitutes a pattern or practice of resistance? What is resistance if it is not confined to unlawful discrimination or retaliation? Well, we think that there are several sort of limiting principles within, first of all, starting with the text of 707A. First, there is the notion that it must be a pattern or practice. So you're talking about repeated conduct. It isn't just one isolated action taken by anybody. Second of all, it has to be intentional conduct. And third of all, there's the sort of reasonable cause requirement. So what we're talking about is within those parameters, it's the kind of conduct that, as the statute says, is intended to deny the full exercise of the rights that are protected by Title VII. So anything that, and I think the conduct at issue in this case is a good example, using language in a separation agreement that, while perhaps unenforceable as a matter of contract law, nonetheless has a strong deterrent effect on signatories who would read it and conclude that they could get in serious trouble for cooperating with the EEOC or filing a charge is, we allege, intended to deny the full enjoyment of their rights under Title VII to cooperate with the EEOC. Is there any comparable statutory provision in which actions that aren't deemed an unlawful practice were nevertheless actionable as constituting a pattern of resistance? Yes, Your Honor. We cited them in our opening brief. In Title II of the Civil Rights Act of 1964 and in the Fair Housing Act and in CRIPA, there are analogous provisions. And again, what these civil rights statutes do is they establish parallel causes of action, one available to private parties and the government and another to the government alone. And that's another important thing to realize about the Section 707 action. It isn't available to just anybody. It's for the government only, and there are significant tradeoffs involved. The remedies are significantly narrowed in that there's no compensatory or punitive damages. It's equitable relief only. The idea is that it's a quick mechanism to be able to go into court and ensure the operation of the enforcement mechanism of the civil rights statute. And that really is consonant with, as the Supreme Court discussed the legislative history of the 72 Amendments to the 64 Act in General Telephone, it's really consonant with what Congress was trying to do with the 72 Amendments to the 64 Act because the concern was that it was toothless, that essentially without litigation authority that the agency wasn't able to do enough to ensure that people's rights under the statute were being vindicated. So it created these sort of parallel causes of action, one under 706 where people essentially could act as private attorneys general and one under 707 where the government could go into court more quickly to safeguard the enforcement mechanism of the statute. Oh, go ahead. So if I thought that if indeed the pattern or practice of resistance term provided a standalone cause of action independent from a charge of discrimination, one would expect that very significant distinction to have been made in clear, plain language rather than read into the statute through reliance on the absence of the word charge in the initial section? With respect, Your Honor, I would say that there is a really clear distinction in the language if you compare the language of Section 707A against the language of 707A. But no court has ever found that? No court has ever been asked to find it, respectfully, Your Honor. So this is a brand new theory? Yes. Okay. Sharon, are you familiar with the Eastman, EEOC versus Eastman coda? Yes, Your Honor. A pretty highly publicized case. Yes, Your Honor. Could you help me on where you find a distinction in the language in this agreement and the one under attack by you in this case? It seems to me the language, while not identical, and that was one that you agreed to. Sure. Well, here's the thing with the language of these agreements. Regardless of what standard you use, whether you're using contract law or whether you're using a sort of Pierce versus Atchison-Tapika standard, you look at the totality of the language. So it's not as if there's some sort of magic sentence or magic phrase that you can put in that sort of rescues an agreement. This is not a very long paragraph in either Eastman CODAC or in our case. I mean, it's relatively short and pretty direct, and I think the challenge language is unless the EEOC wants to move away from whatever was accepted in Eastman CODAC, and maybe the agency wants to, it seems to me it's pretty close. Well, respectfully, Your Honor, the language in the separation agreement here is I would say more dense, more convoluted, and sort of seesaws back and forth. I mean, if we start with paragraph 7, I can sort of go through the language, but if you start with paragraph 7, it sort of goes through this litany of what is not permissible. It includes charges on the list of what's released. It includes any matter whatsoever relating to the employee's employment, lists the civil rights statutes including Title VII explicitly, the ADA, the ADEA, adds a catch-all for any claim of unlawful discrimination of any kind, any claim for any costs, expenses, including attorney's fees, and then sort of swings back to this doesn't include any rights that the employee cannot lawfully waive. Now, I understand that that phrase has shown up in other waivers, including the sample waiver that's in one of the EEOC's technical assistance materials, but, again, you have to look at that in the context of where it's showing up. And in light of the foregoing, which says you can't file charges, your rights under Title VII are gone, your right to bring any unlawful discrimination claim of any kind is gone, oh, but you can't release anything you can't lawfully waive. So to look at that in context, and, again, we're talking about the reasonable worker, not the reasonable, sophisticated contract lawyer here. Someone reading that is not going to understand what that really means. Then you go to Paragraph 8. Paragraph 8 says you haven't filed any action of any kind. You agree that you're not going to initiate any action of any kind in any forum. I'm going to reimburse the company for any legal fees. And then, again, swings back to this, oh, but this isn't intended to interfere with your right to participate in a proceeding where you've just said that you're not going to bring any charges in any agencies. So, again, you've got this sort of very dense, convoluted language swinging back and forth, which isn't the same as it was in Eastman-Kodak. It has some similarities. Then you go to Paragraphs 13 and 14, which, in some ways, as we said in our briefs, to us this is even more deeply problematic because we routinely, in the course of investigations, send out letters to witnesses when people have filed charges and said there's discrimination going on here. And witnesses don't respond. We never hear from them again. Why don't we hear from them again? Well, look at the language here in 13A. The information that's described in Paragraph 13A about nondisclosure, pharmacy policies and practices, information concerning the corporation's personnel, skills, abilities, and duties of the corporation's employees, a lot of this is precisely the kind of information that is sought in an investigation. Go to Paragraph D, and now it gets really interesting. Employee will not make any statements that disparage the business or reputation of the corporation. And then there's this exception for making truthful statements that are required by law. Now, we're not interested in protecting people's right to lie, but heaven only knows what truthful means. Is CVS the arbiter of what's truthful? If they decide that someone has testified that there was discrimination and there wasn't, will they come after you for legal fees? And, again, this is the reasonable worker reading this. Cooperation, same thing. You can't provide any documents to the EEOC until you've notified the Chief Human Resources Officer in writing and by telephone. You agree to cooperate with CVS in resisting whatever has been subpoenaed until they tell you otherwise. And if you screw up, you are potentially liable, again, for legal fees and an injunction. So, you know, respectfully. Well, other than anecdotally referencing whatever contacts the agency has had, has anyone been misled by this? I mean, I know it's a supposition you have in theory, but, I mean, it's hard evidence. Isn't it speculation, did you think, that people are misled? So we believe that, and I see I'm going into my rebuttal time, but I'd like to answer your question. Don't worry about your time. Okay. We don't have any evidence that any particular person was deterred here, and, of course, the charging party wasn't deterred from filing a charge. But we believe that the standard that governs here should be an objective standard that asks whether a reasonable person would be deterred, much for the same reason that that applies in retaliation cases. Well, you know, you speak about the density of the language, and I appreciate your argument there. But would you agree that it's the covenant not to sue which is the focus? That's a critical paragraph, so isn't that what you're concerned about? Actually, Your Honor, I have to tell you the covenants in paragraph 13 are just as troublesome to us as the covenant not to sue. Yeah. Because of the problem with witness cooperation and participation in investigations, which can be very difficult. Yeah, but the agency generally is in favor of non-litigation, right, the resolution without litigation. Yes, absolutely. But, again, you know, what 13 goes to is we're not interested. You're right that we're certainly not interested in having more people sue their employers. That's not what's at issue here. All that's at issue is their ability to communicate with the agency and to let us know what's going on so that we can do our job. That's why, see, what's going on in paragraph 13 has nothing to do with people suing their employer. What's going on in paragraph 13 really goes to the heart of people's ability to cooperate with the EEOC. It's not about filing lawsuits. It's about witnesses testifying in investigations. These may not even be people who filed a charge. These may be where someone else has filed a charge, and we're now saying, okay, this person's been named as a witness. Maybe it was a supervisor. Maybe it was someone who's been identified as having information. Can you tell us what's going on? And there's now all these strictures in place that, no, you can't talk to us until you've done these following things, or you could be liable. Has the agency ever advanced what they consider a model language for this area? In fact, the agency has issued model language for this area. We cited it in our briefs. There's a technical assistance with a Q&A that we cited in our briefs that has a model waiver with model language in it. I'm aware of that. Is it your position then that that should be not only the gold standard but the standard for these types of agreements? Is that the agency position? The agency's position is certainly not that that's the only acceptable language, but certainly it's a guidepost that employers can look to. We've also had an enforcement guidance on what's waivable and non-waivable that was issued in 1997, and that was guidance that was voted upon by the Commission, so that's been out for almost 20 years, and that's been available for employers to look to as well for more detailed guidance. Well, how many severance clauses would this affect? I mean, this is pretty common. A lot of people on reduction in force and early retirement, it's all kinds of things that have something on severance. Are they all suspect? They are suspect, but if I can just answer your question. Of course. The language is suspect, but only that language is suspect. These all contain severability provisions. So if this language is invalidated, we're not suggesting that all the agreements go out the door in their entirety. It's just that the language that interferes with or deters charge filing and cooperation is invalid. Yeah, but a lot of that's just implied, just the fact that they sign a lot of things, they try to caution people that there's certain limitations now in exchange for whatever this payment is, and it's not a bribe, it's just a lot of, this is what concerns me really is how broadly this affects. You admit that this is new, something you're initiating, but at the same time it might affect lots of other people. Every employer has some, I guess you would say, exposure from the EEOC, and every employee has certain rights, and that means every employer in the country is going to have to look at this as some cautionary thing whenever they enter into some kind of a, well, you call it a separation agreement or severance clause. That's correct, although it's extremely narrow in that, first of all, to be clear in this case, this is sort of an injunctive only case. There are no monetary damages at issue. There is no exposure in that sense. What we're talking about is a change of language only. So yes, certainly there may be a large number of employers who might have to change some language, but it's a very narrow remedy, and it certainly would not invalidate the other aspects of the bargain for agreements and the fact that there was consideration. I mean, there's nothing about that that would be affected by any ruling here. And you don't think there's any obligation to do any kind of conciliatory thing? That's one of the problems here, obviously. No. Again, I see that I'm well over my time, but I want to be respectful. So the obligation to conciliate in Title VII flows from the existence of a charge, and this is in Section 706B of the statute. The charge starts it all off. Someone files a charge. That then triggers an investigation with subpoena power, and if there is a cause finding, then there's an obligation to conciliate. Where there's no charge, there is no conciliation obligation. So, for example, the EEOC engages in all kinds of other litigation, subpoena enforcements, for example, temporary restraining orders, preliminary injunction litigation. We never conciliate in those cases. There's no obligation to, there's no charge. So in Section 707, resistance actions, where even the district court here acknowledged that the EEOC can proceed without a charge, if there is no charge, there is no conciliation obligation under the statute. All right. Thank you. Mr. Dreiband? Good morning, Your Honor. My name is Eric Dreiband. I represent CVS Pharmacy in this case. Can we start with that last point, basically? Because, you know, the settlement agreement provides that, you know, the employee may not make any statement that disparages the corporation, any of its officers, any of its employees, unless required by law, requesting confidential legal advice. I mean, wouldn't that preclude the employee from filing a discrimination claim describing adverse actions by the corporation or its employees? And then there's that provision that shifts legal fees to the employee. Doesn't that constitute an employee penalty for any employee who's, you know, pursuing his or her EEOC rights? No, not at all, Your Honor. Not at all? No. First of all, this Court in the EEOC v. Severn-Trent case upheld non-disparagement clauses against an EEOC challenge as common and perfectly appropriate, particularly when there's no allegation that anyone ever tried to use such a clause to intimidate, of course, or deter an employee or former employee from filing a charge or cooperating with the EEOC. On the question of... Well, maybe they could have brought... Maybe they can bring that evidence into this case, eventually. Well, there's no allegation here that the EEOC needs discovery or that such evidence would matter. The claim that EEOC is asserting is that the language itself in the agreement violates Title VII. On the fee-shifting issue, Your Honor, this Court has upheld fee-shifting provisions routinely. The Sixth Circuit in the EEOC v. Sundance Rehabilitation upheld a fee-shifting provision of this sort as an issue. And there's no reason to infer from anything alleged in this case that CVS Pharmacy ever in any way tried to use this agreement to deter or intimidate or resist any kind of Title VII rights. Let me add, too, there really are... I'm sorry, Your Honor. Yeah, I was just going to mention going... Unless... Did you want to follow up on that question? Are you following up on the question? On which point, Your Honor? No, I could respond to your next question. Oh, all right. Because the District Court, of course, granted summary judgment on the failure of the EEOC to pursue conciliation. But in match mining, I'd like you to talk about that because the Supreme Court held that the appropriate remedy for such a violation is to order the EEOC to undertake the mandated efforts to obtain voluntary compliance. And in light of match mining, should we be vacating and remanding for the court to order a proper relief? No, Your Honor. With respect, the issue in mock mining was whether or not there is judicial review of EEOC's conciliation process. And what the passage you're referring to from the court's opinion refers to a section of Section 706 that authorizes a District Court judge to use the court's discretion to stay proceedings in the District Court if the commission attempts conciliation but does not satisfy its obligation. What we have in this case is a wholesale abdication and a failure by the commission to comply with multiple provisions of both Title VII and its own binding regulations. The commission, before it can file a lawsuit, must receive a charge, give notice of a charge, investigate a charge, issue a reasonable cause determination by a District Director and conduct conciliation proceedings and then notify the respondent of the failure to conciliate. All of that is contained both in the statute and in the binding regulations that govern 706 and 707 actions. In this case, the commission complied, or I should say, the commission violated every single one of those obligations when it filed this case. That is different than what's at issue in the mock mining case where there was a very narrow question of judicial review of the conciliation obligation. In addition, in this case, the court has before it the merits of this case. And it's clear, at least we think it's clear, number one, that Section 707A of Title VII, which is the provision that the commission is proceeding on here, does not authorize a claim for an alleged class action violation of Title VII merely for offering a severance agreement. The commission's theory here is wholly inconsistent with every single Supreme Court case that has ever considered Section 707 of Title VII. It's also inconsistent with every decision issued by this court. It's inconsistent with the positions of the Justice Department about the meaning of Section 707. And it's even inconsistent with everything the EEOC has said about the meaning of Section 707 prior to this case. So I'll go on. Does that answer your question, Your Honor? It certainly is an answer. Well, thank you, Your Honor. Let me say, there really are three issues in the case. The first issue is whether or not the severance agreement itself resists Title VII rights. The second issue is, of course, the meaning of Section 707A and whether or not it creates a cause of action for something that EEOC does not like, even though there is no alleged discrimination, no alleged retaliation, and no alleged unlawful employment practice. And then, finally, there is this procedural question, Your Honor, that you raised, that Judge Rovner raised. On the first question, the agreement, Paragraph 8, expressly authorizes participation in EEOC proceedings that both, it clarifies both with respect to Paragraph 8 and the covenant not to sue, that there is nothing in the covenant not to sue that in any way limits participation in EEOC proceedings. And, in addition, there is nothing in the entire agreement that in any way inhibits or limits cooperation with EEOC in an investigation. There is no plausible reading of this agreement that would suggest that, number one, that it is intended to resist anything. And what I heard from the Commission was that they concede that this case requires intent, that they are correct about that, and there is no reason to suspect that an agreement that advises people to speak with a lawyer that provides 21 days for individuals to consider the agreement, seven days to revoke it after they sign it, repeatedly tells them or suggests that they consult with a lawyer, fully complies with the Older Workers Benefits Protection Act, which is the only law that EEOC enforces that actually regulates severance agreement, that does all of those things, provides them with benefits to which they are not otherwise entitled, there is no reasonable reading of that agreement as Judge Darrow properly found that would suggest that anyone intended it to deter anyone from participating in EEOC proceedings. And in fact, EEOC's allegations in this case are not only speculation, they are speculations that are totally at odds with the record in this case. As Ms. Theron said, what happened in this case was Tanya Ramos, a former employee, signed the agreement, promptly went to the EEOC, filed a charge of discrimination and suffered no retribution for doing so. So our view is that there is no plausible allegation here nor could there be any that the agreement in any way inhibits Title VII rights or resists anything. Secondly, the Commission complains about font size, page length, legalese and things of that nature but Title VII is an anti-discrimination statute. It does not establish standards about font size, page length or legalese. EEOC, as I mentioned, complains about a non-disparagement clause but this Court has already confirmed the use of such clauses in agreements. Secondly, excuse me, the Commission also would essentially on the question of the meaning of Section 707A would completely read out of the statute the phrase rights secured and described elsewhere in Title VII. Those rights have always been understood by this Court and by the Supreme Court as the rights contained in Section 703 and 704 of Title VII which define the unlawful employment practices protected by the statute. But here the EEOC alleges no such violation of either Section 703 or 704 and the absurdity of the Commission's position that the word resistance in the statute creates an independent substantive cause of action that somehow is unbounded, recently discovered, is highlighted by the fact that the Commission would say and must say as part of its theory that there is only a violation in this case if CVS used the agreement too many times. In other words, by focusing on the word resistance they are reading out they cannot square that language with the pattern or practice verbiage which says there is only a violation of the statute if there is some kind of pattern or practice that is, if the agreement is used too many times. Which means, according to the Commission's theory, CVS can resist Title VII rights with this agreement as long as it just does not do that too many times. That is an absurd and unprecedented and totally unsupported reading of Title VII. In addition, I should clarify on the question that Judge Rovner asked about the conciliation proceeding here, I think it is important to note what happened in this case. And particularly with respect to the Commission's assertion that Section 707 creates some kind of swift remedy. The fact is Ms. Ramos filed a charge in this case in August of 2011. CVS provided the Commission with the agreement that is at issue in the case to explain to the Commission that there was no relief that the Commission could recover in this case. That happened in April of 2012. If the Commission then was concerned about creating a swift remedy, it could have immediately gone into court under Section 706 F2 of the statute and sought an injunction to stop what it now alleges is some kind of chilling effect on its investigations. But there was no chilling effect. Instead, from the time the Commission received the agreement in March of 2012 until the summer of 2013, the Commission did nothing other than continue to interview CVS witnesses, which CVS cooperated fully. Then the Commission issued a reasonable cause letter that was totally unauthorized by the delegation of authority contained in EEOC's regulations. Those regulations clearly say that only district directors have authority to issue reasonable cause determinations. That didn't happen. Instead, an EEOC attorney just did it on his own initiative. Thereafter, the Commission dismissed Ms. Ramos's finding of a reasonable cause by a district director and only when there is a charge that is currently pending before the Commission. At that point, the Commission refused to engage in any kind of conciliation proceedings, despite the fact that CVS Pharmacy repeatedly offered to participate in mediation. CVS Pharmacy repeatedly reminded the Commission of its conciliation obligations. When we hear today that the Commission recognizes that Title VII is designed to encourage pre-suit resolution of suits, what has happened in this case is totally at odds with that entire objective of Title VII, both with respect to the Commission's procedures and with respect to severance agreements in general. A few other points, if I could. Could I just stop you here just for a second? The issue started out here. I don't know much about why she was not capable of the job, but was she a store manager? Yes. Tanya Ramos was a regional loss prevention manager. She is above a store level, a regional level manager. Apparently, maybe she just wasn't able to do her job. It wasn't capacity, and so there was sort of an agreement to sever. That's correct, Your Honor. There was an agreement that she was going to leave the employment of CVS Pharmacy. They presented her with the severance agreement, offered to give her the benefits of that agreement, additional discrimination against CVS Pharmacy. My question is because CVS is obviously very big and have lots of managers at various levels, and they must from time to time find people who are not able to do their job. How often, if ever, is this type of severance used? The allegation in the case is that CVS has made changes to the agreement since the one that's at issue in this case. As we told the Commission we were doing over two years ago. Generally, there are occasionally differences in severance agreements depending on the unique circumstances, but CVS does use a standard severance agreement in this case. Is this challenge then by EEOC, does this affect all of them? Yes, it could. Their claim is that CVS should, that every single agreement is invalid. What about other companies that have similar agreements, or are there any? Yes, I think there are as far as I know. You have amicus briefs that say there are, I guess. The amicus briefs say something like that. The amicus briefs are 100% correct, Your Honor. Severance agreements are commonly used throughout the United States by employers. They're routine, they're common. This agreement was patterned on, Your Honor, Judge Flom, you mentioned the Eastman Kodak case. This one was patterned on the language at issue in that case in terms of explaining that there is no violation for participation in EEOC proceedings. And they are very, very common. Yes, the commission is essentially seeking to attack all of these severance agreements and essentially undo them. That's what it appears, I can't speak to the commission's motive, but that's what it looks like to me, yes. If I could say a few other things, Your Honor, just to respond. First of all, this citation to this Klu Klux Klan line of cases is an apposite for two reasons. One, the cases the commission cites are from the mid-1960s, they all involved egregious discrimination and they involved the question of whether or not individuals or persons are covered, which they clearly are by Section 707A. There's no reason in any way those things are remotely close to this case. I see my time is up and I don't want to run over, Your Honor, but if the Court has any other questions. Thank you, Your Honors. Your time has expired, but we asked you a lot of questions, so you may have your three minutes. Thank you very much. I appreciate it. I'd like to start first with Judge Rovner's discussion of mock mining very quickly. I want to point out that as the Supreme Court said in mock mining, again, the obligation to conciliate flows from the existence of a charge. The Supreme Court explained in mock mining that what the Supreme  said was that there is no charge, there is no obligation to conciliate, so I guess we agree with CVS on that much. There's nothing to remand here as far as conciliation is concerned. I do want to talk about the regulation 1601.24 because that's an important point that CVS totally misconstrues here and the district court did as well. 1601.24 is an implementing regulation for Title VII. It cannot create a legal obligation that is not present in the statute. It is addressed to processes for how you handle charges and how you conciliate when you have a charge. So as we've said, when there's a charge, whether it's a charge that sounds in Section 706, we actually don't classify charges as Section 706 or Section 707, they're charges of unlawful employment practices. So where there's a charge, Section 1601.24 talks about how you conciliate it, but it's only an implementing regulation and as we mentioned, as my colleague cited, Severance Trent does not endorse non-disparagement clauses or say they can trump subpoenas. It was talking about the grant of a preliminary injunction and whether that was appropriate in light of what was going on at the time. CVS maintains that the fact that there       1601.24 does not include non-disparagement clauses. So I'd like to refer you to Professor Sullivan wrote an excellent article that we cited in our reply brief on the inclusion of non-disparagement clauses. The drafters of this kind of language know that it has a deterrent effect and there's sort of a value to including it even though it may be independently unenforceable under contract law. So I recommend it to you. It's interesting reading as well as having valuable bearing on this case. Finally, the last point I'd like to make is about the EEOC never refused to mediate this case or attempt to resolve it with CVS prior to going to trial. What happened to be clear was that CVS insisted that they would not discuss this case with us in any form other than through section 706 conciliation which we maintain doesn't apply. CVS has been telling us for years as my colleague says that they've changed the language in their severance agreement but they've consistently refused to tell us what they've changed it to or when they've changed it. So it's not as if we were told that something was changed and given an opportunity to resolve this. They've said if you won't do this through conciliation we won't talk about it. Couldn't you read the two and see? No they won't disclose it to us so we literally don't know what it says. So a claimant has to present it to you I suppose. If somebody's got a problem and don't like their job action and they've been separated then you would have to see that first. Well yes whatever severance agreement was in place at the time we would have to see it but we've never seen it. Without a claim there's no access to it what you're saying. Unless they would agree to show it to us in some form yes. Does that indicate that there's been no CVS employee in the last three years that's made a claim with the EEOC? I very much doubt that's true. Because then you would have access. Well not necessarily I mean a severance agreement wouldn't necessarily be included if the employee chooses what to submit with their charge as supporting documents and depending what they're alleging I mean if it's harassment say it may or may not be relevant. If they allege for example in this case racial discrimination you could subpoena that. Conceivably yes I have to tell you from where I stand in my job in the agency I am in no position to tell you how many charges have been filed against CVS or what. No I didn't mean to hold you accountable for it but I just was thinking with passage of time that it might have shown up in some other case if it did not. Not to my knowledge Your Honor. Thank you very much. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.   advisement. If you have questions please contact the Cali public